## Staunton.

RALSTON, COMMITTEE, &c., v. EFFINGER'S EX'OR.

SEPTEMBER 15th, 1890.

TRUST DEED—*Construction—Amount secured.*—In contract of sale, vendor admitted want of title to one-seventh of the land, and, agreeing to indemnify, placed with vendee $600 in bonds, which being collected, the money was paid to vendor, who later gave a trust deed stating the sale, the want of title to one-seventh and five-sevenths of one-seventh of the land, the design to be that the deed be in lieu of the bonds and the indemnity intended to be the same intended by the contract. Finally vendee was evicted. *Held*, the contract did not fix $600 00, but his *actual loss*, as the amount vendee was entitled to, and that the trust deed secured to him.

Appeal from decree of circuit court of Rockingham county rendered April 19, 1889, in the suit of Hall against Effinger's Ex'or, and other causes consolidated therewith. Opinion states the case.

*Henry V. Strayer* and *W. Leggett*, for the appellant.

*W. B. Compton* and *G. G. Grattan*, for the appellee.

LEWIS, P., delivered the opinion of the court.

The single question to be determined is, What is the amount of the lien in favor of Effinger under the deed of trust on the Ruffner tract of land from Phillip Liggett, to Bryan, trustee, dated December 3, 1857?

The facts are these: In March, 1850, M. Harvey Effinger

sold to Liggett a tract of land lying near the town of Harrisonburg, in consideration of which Liggett agreed to pay the sum of $4,000 and to convey to Effinger certain real estate lying east of German street, in the said town, known as the Hall property. Liggett's title to the last-mentioned property was, in part, confessedly defective. Accordingly, the parties, on the 29th of March, 1850, entered into a written contract, under seal, which, among other things, contained the following clause, to-wit:

"Inasmuch as there is a share or interest of one-seventh in the reversion in the Hall property for which said Liggett has no title, he agrees to indemnify the said Effinger against any failure in the title for said share or interest by placing in his hands good land bonds to the amount of six hundred dollars as security for the title of that share or interest."

It is conceded that land bonds to that amount were received by Effinger from Liggett soon after the execution of the contract, to be held by him for the purpose aforesaid. These bonds were collected and the proceeds, it seems, were paid over to Liggett by Effinger.

Afterwards, however, to-wit, on the 3d of December, 1857, the deed of trust above mentioned was executed. After reciting the fact of the sale and conveyance, with general warranty of the Hall property to Effinger, and that there were certain "outstanding shares in the reversion thereof, namely, one-seventh and *five-sevenths of a seventh*," for which Liggett had no title, the deed goes on to say that, in order to protect and indemnify Effinger against loss on account of said outstanding shares, and in order to give a security in lieu of the bonds previously delivered to him as above stated, the land is conveyed to the trustee, etc. And then follows the clause out of which this controversy arises, which is in these words: "It is covenanted and agreed that the indemnity intended is the same which was intended by the contract of March 29, 1850, between said Effinger and Liggett."

After his death, Effinger's representatives were evicted from the Hall property, and the question is, as above stated, what is the amount to which his estate is entitled under the trust deed? The appellants contend that the amount was definitely fixed by the contract of March 29, 1850, at the sum of six hundred dollars, and that the indemnity provided by the deed is the same. But we do not concur in this view. We think the decree of the circuit court is right in holding that the true amount is to be measured by the actual loss sustained by Effinger's estate by reason of the eviction; that is to say, the value of the said outstanding interests, which is to be ascertained according to the sum paid by Effinger for the whole property; and upon that basis of calculation, the master correctly ascertained their value to be $1,089 79, which sum is to bear interest from July 26, 1880, the date of the eviction.

Although the indemnity provided by the deed is spoken of as "the same which was intended by the contract" previously executed, yet the word "same" was obviously not used in the sense for which the appellants contend. The indemnity was, in fact, not the same. Under the contract the indemnity was in the shape of bonds; under the deed the security was upon land. Moreover, under the contract, the indemnity was against loss which might arise out of a failure of title as to a one-seventh interest, whereas the outstanding interests mentioned in the deed are a one-seventh and five-sevenths of a seventh.

In short, we concur with the appellees that the explanation of the matter is that the last clause of the deed, above quoted, was added to prevent any claim by Effinger thereafter under the contract, and to show that the provision for indemnity made in the deed was intended to take the place of the indemnity provided for in the contract. We have no doubt that this is the true view of the case, and the decree must, therefore, be affirmed.

DECREE AFFIRMED.